Highground v. Cetacean                    CV-02-462-M    05/22/03
                    UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Highground, Inc.,
      Plaintiff

      v.                                    Civil No. 02-462-M
                                            Opinion No. 2003 DNH 084
Cetacean Networks, Inc.,
      Defendant


                         **O R D E R**


      In March of 2000, Highground, Inc., a public relations and

marketing firm, and Cetacean, Inc., a start-up networking

company, entered into a one-year contract pursuant to which

Highground would provide Cetacean with various consulting

services (the "March Contract").  Seven months later, the parties

executed a second contract which differed from the first in only

a few material ways (the "October Contract").  The major

differences related to the terms of Highground's compensation

(which was augmented), the duration of the contract (which was

lengthened to two years), and the conditions under which it could

be terminated.

After the relationship between the parties soured, Highground brought this suit, seeking compensation to which it says it is entitled under both the March and October contracts. Its complaint advances six claims against Cetacean: breach of the March Contract (count one); breach of the March Contract's implied covenant of good faith and fair dealing (count two); breach of the October Contract (count three); breach of the October Contract's implied covenant of good faith and fair dealing (count four); violation of the Massachusetts Consumer Protection Act (count five); and violation of the New Hampshire Consumer Protection Act (count six). Cetacean moves to dismiss counts one, two, five, and six. See Fed. R. Civ. P. 12(b)(6). Highground objects.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular

2

Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002). Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). See also Gorski v. N.H. Dept. of Corrections, 290 F.3d 466, 472 (1st Cir. 2002) ("The issue presently before us, however, is not what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in order to be permitted to develop her case for eventual adjudication on the merits.") (emphasis in original).

## Background

Accepting the allegations set forth in Highground's complaint as true, the material facts appear as follows. On March 1, 2000, the parties entered into a contract under which Highground would provide various consulting services to Cetacean. In exchange, Highground would receive a fixed fee of $10,000 each month between March 1, 2000, and February 28, 2001. The contract also provided that Highground would receive a "deferred service bonus" in the form of cash and stock warrants in Cetacean.

3

Complaint, Exhibit 1 at para. 8a.  The contract also provided

that:

> Monthly fees will be increased to $15,000/mth [sic] if
> total investment in the Company exceeds $8 million
> during the life of the contract.  A new twelve month
> contract will then be initiated to provide the Work
> outlined in [paragraph] 4.0.

Id. at para. 8.


In order to facilitate Cetacean's ability to secure venture

capital funding, the parties agreed that the compensation

provisions of the contract would become effective immediately

after Cetacean closed on its first round of funding.  Had

Highground not agreed to that modification (or clarification) of

the contract (and assuming Cetacean had actually been able to

secure funding under those conditions), it would have been

entitled to approximately $450,000, plus a 0.4% equity stake in

Cetacean, as a result of the first round funding of $15 million.


After the first round of funding closed, consistent with

paragraph 8 of the March Contract (since "total investment in the

Company exceed[ed] $8 million"), the parties began negotiating a

new agreement - the October Contract.  The services that Highground would provide to Cetacean were identical to those described in the March Contract.  But, because the parties recognized that Highground had waived its right to substantial compensation under the March Contract, the terms of the October Contract provide for significantly higher levels of monthly compensation than the parties contemplated when they executed the March Contract (i.e., up from the anticipated sum of $15,000 per month, to $25,000 per month).  Additionally, the terms under which the contract could be terminated were drafted in a way that was much more beneficial to Highground than were similar provisions in the March Contract, and the contract term was lengthened from one year (as anticipated in paragraph 8 of the March Contract) to two years.

Unlike the "deferred service bonus" provision in paragraph 8a of the March Contract, the corresponding paragraph in the October Contract obligates Cetacean to provide Highground with "additional compensation" in the form of options to purchase up to 30,000 shares of Cetacean stock, subject to certain limitations.  See Complaint, Exhibit 2 at paragraph 8a.  The

5

October Contract does not, however, incorporate the "deferred service bonus" provisions of the March Contract, under which Highground was to have received cash and equity in Cetacean. The October Contract (unlike the March Contract) also includes an integration clause, which provides that, "This agreement constitutes the entire agreement of the parties with regard to its subject matter, and may only be amended by a writing signed by both parties." Complaint, Exhibit 2 at para.

## Discussion

Initially, it probably bears noting that neither the March Contract nor the October Contract contains a choice of law provision. And, neither party has addressed whether New Hampshire or Massachusetts law governs this dispute. Instead, the memoranda submitted by the parties tend to invoke Massachusetts common law when it, rather than New Hampshire common law, favors their respective positions; and, perhaps not surprisingly, the parties point to New Hampshire law when it, rather than that of Massachusetts, provides greater support for their respective views - a decidedly unhelpful practice. In the absence of any meaningful guidance from the parties, the court

has, for the purpose of addressing the pending motion to dismiss, assumed that New Hampshire law applies.

I.   Highground's Claims under the March Contract.

Generally speaking, Cetacean asserts that, as a matter of law, after the parties' executed the October Contract (which contained an integration clause), its obligations under the earlier contract ceased. Accordingly, it says that, as a matter of law, it could not have "breached" the terms of the March Contract after the October Contract went into effect. Highground, on the other hand, denies that the October Contract represents a total integration of the parties' agreement and insists that, at a minimum, the "deferred service bonus" provisions set forth in paragraph 8a of the March Contract survived the execution of the October Agreement. In short, it says the October Contract "was in addition to, and did not supercede, the March Agreement." Highground's memorandum at 5. And, it naturally follows that Highground claims it is entitled to compensation under paragraph 8a of both contracts.

In opposing Cetacean's motion to dismiss, Highground asserts that it is entitled to introduce parol evidence to demonstrate that, notwithstanding the presence of an integration clause, the October Contract was <u>not</u> intended to represent a total integration of the parties' agreement. In other words, Highground says it should be afforded the opportunity to present evidence supportive of its claim that "[a]t all times material hereto, it was understood that the new contract was in addition to, and did not supercede, the March Agreement." Complaint at para. 27. <u>See also</u> Complaint at para. 34 ("At all times material hereto, it was Highground's understanding that the incentives set forth in Paragraph 8a of the October Amendment were in addition to the deferred service bonus set forth in Paragraph 8a of the March Agreement.").

Under New Hampshire law, parol evidence is admissible to show that a written contract was not intended to describe all of the parties' respective rights and obligations.

> <u>Even when an integration clause is included in the writing</u>, as in this case, this court will allow the admission of parol evidence to prove that the writing was not a total integration. [Previously] this court held that the parties' intent to create a total

8

> integration can be proved by the circumstances surrounding the writing; the document alone will not suffice. The integration clause, however, is some evidence that the parties intended the writing to be a total integration.

Lapierre v. Cabral, 122 N.H. 301, 306 (1982) (citations and internal quotation marks omitted) (emphasis supplied). See also Richey v. Leighton, 137 N.H. 661, 664 (1993) ("A lack of integration of an instrument may be proved by reference to the circumstances surrounding the writing."); Restatement (Second) Contracts § 214 (1981) ("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish (a) that the writing is or is not an integrated agreement; . . ..").  See generally Restatement (Second) Contracts § 209 and comments a - c (1981) (discussing, among other things, the distinction between an "integrated agreement" and a "completely integrated agreement," as well as the means by which it is determined whether an agreement is "integrated").

At this juncture, the issue before the court is not whether Highground is likely to succeed on the claims advanced in counts one and two, or even whether it can demonstrate that the October

contract is not a fully integrated memorialization of the parties' respective rights and obligations.  Rather, the issue is far more limited: whether Highground has stated viable causes of action.  It has.

Notwithstanding the presence of an integration clause in the October Contract, Highground is entitled, under New Hampshire law, to present evidence that the parties did not intend that contract to supercede or otherwise void the compensation scheme memorialized in the March Contract.  Whether Highground actually has such evidence and/or whether it can survive a motion for summary judgment are, of course, entirely different questions that are not before the court.

II.  <u>Highground's Consumer Protection Act Claims</u>.

As for Highground's consumer protection act claims, Cetacean says a mere breach of contract is not, as a matter of law, actionable under either the Massachusetts or the New Hampshire statute.  Highground, on the other hand, says that its consumer protection act claims are based not upon Cetacean's alleged breach of contract, but instead upon its alleged breach of the

implied covenant of good faith and fair dealing. And, it has cited some legal authority (albeit precedent exclusively from Massachusetts) which stands for the proposition that a violation of the implied covenant of good faith and fair dealing may constitute a violation of the state consumer protection act.

As is the case with Highground's counts alleging breach of the March Contract, its consumer protection act claims lend themselves to more appropriate disposition in the context of summary judgment, when the factual background underlying the parties relationship, the circumstances surrounding their negotiation of the October Contract, and their subsequent falling-out are more fully developed.

## Conclusion

The court cannot conclude that, as a matter of law, Highground has failed to state viable claims in counts one, two, five, and six of its complaint. Accordingly, Cetacean's motion to dismiss (document no. 10) is denied.

11

Should the parties disagree with the court's assumption that New Hampshire (and not Massachusetts) law governs the resolution of all claims in Highground's complaint, they should fully brief the choice of law issue in connection with future motions, where there might be a material difference in the governing law of New Hampshire and Massachusetts.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 22, 2003

cc:   George R. Moore, Esq.
      Steven E. Hengen, Esq.
      Michele A. Whitham, Esq.