**Samuel SCHWARTZ, Douglas Scandrett, Evan Simons, Joseph D.Monty, Jr., and Nicole Foley, Plaintiffs**

v.

**Lewis C. BRODSKY, Director of the United States Selective Service System, and Thomas Reilly, Massachusetts Attorney General, Defendants.**

**No. CIV.A. 03–10005–EFH.**

United States District Court, D. Massachusetts.

May 29, 2003.

Harvey A. Schwartz, Jonathan J. Margolis, Rodgers, Powers & Schwartz, Boston, MA, for Plaintiffs.

Romeo G. Camba, Attorney General's Office, Barbara Healy Smith, United States Attorney's Office, Boston, MA, for Defendants.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

This matter is before the Court upon defendants' motions to dismiss. Defendant Brodsky has moved to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Reilly has moved under Rule 12(b)(1) for lack of jurisdiction over the subject matter, as well as under Rule 12(b)(6). Because the Court grants Defendant Brod-

sky's motion to dismiss brought under Rule 12(b)(6) and this dismissal affects the entire complaint as it relates to both defendants, the Court finds it unnecessary to consider the additional grounds for dismissal advanced by Defendant Reilly.

The Plaintiffs Samuel Schwartz, Joseph D. Monty, Jr., and Evan Simons are male United States citizens and residents of the Commonwealth of Massachusetts. Schwartz and Simons are eighteen years old. Monty is twenty. Schwartz, Monty, and Simons are college students. Plaintiff Scandrett is a nineteen-year-old Canadian citizen who has resided in the United States since 1988. A college student, he presently resides in Massachusetts and is a permanent resident alien. Plaintiff Nicole Foley is a seventeen-year-old female United States citizen and resident of Massachusetts. She is a high school senior. Were she male, Foley would have to register with the Selective Service System in October 2003.[1]

Defendant Brodsky is the Director of the United States Selective Service System.[2] Defendant Reilly is the Attorney General of the Commonwealth of Massachusetts. Brodsky and Reilly are named in their official capacities.

Plaintiffs' complaint consists of two counts. In the first, plaintiffs allege that the federal Military Selective Service Act ("MSSA"), 50 U.S.C.App. §§ 451–473, under which only men are required to register with the Selective Service System and are subject to criminal and civil penalties and sanctions for failing to do so violates their right to the equal protection of the laws under the Due Process Clause of the Fifth Amendment to the United States Constitution. In count two, plaintiffs contend that the Massachusetts statutory scheme under which only male students are barred from receiving state financial aid if they have not registered with the Selective Service System violates the same right of the plaintiffs under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and thus constitutes a violation of 42 U.S.C. § 1983. Plaintiffs seek declaratory relief and permanent injunctions prohibiting Brodsky from implementing or enforcing the Selective Service System and Reilly from seeking Selective Service registration information from students seeking financial aid from the Commonwealth. Plaintiffs also seek costs and expenses.

*Standard of Review*

In ruling on a motion to dismiss for failure to state a claim, the District Court must accept as true all factual allegations in the plaintiff's complaint and construe all reasonable inferences in favor of the plaintiffs. *See* Fed.R.Civ.P. 12(b)(6); *Gorski v. New Hampshire Dep't of Corrections*, 290 F.3d 466, 473 (1st Cir.2002); *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir.2001); *Estate of Soler v. Rodriguez*, 63 F.3d 45, 53 (1st Cir.1995). Dismissal is warranted if it is clear no relief could be granted under any set of facts that could be proved consistent with the allegations. *Gorski,*

---

1. As to Plaintiff Foley, lack of standing provides the Court an alternative ground for dismissal. Individuals "who have never been registered with the Selective Service System and are not under any compulsion to register in the near future" suffer no "distinct and palpable harm nor imminent threat of concrete harm ... sufficient to establish standing...." *Goldberg v. Rostker,* 509 F.Supp.

586, 591 (E.D.Pa.1980), *overruled on other grounds by Rostker v. Goldberg,* 453 U.S. 57, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981).

2. Brodsky was substituted as named defendant for Alfred Rascon, the former Director of the Selective Service System, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

290 F.3d at 473; *Roma Const. Co. v. aRusso,* 96 F.3d 566, 569 (1st Cir.1996).

*Background*

The United States Constitution gives Congress the power "[t]o raise and support Armies," "[t]o provide and maintain a Navy," and "[t]o make Rules for the Government and Regulation of the land and naval Forces." U.S. Const., art. I, § 8 cls. 12–14. Pursuant to this authority in 1948, Congress enacted the MSSA, under which

> it shall be the duty of every male citizen of the United States, and every other male person residing in the United States, who ... is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder.

50 U.S.C.App. § 453(a). The purpose of registration is to facilitate an eventual draft by providing a pool of individuals for subsequent induction. *Rostker v. Goldberg,* 453 U.S. 57, 60, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981).

Massachusetts, meanwhile, has linked eligibility for state-funded student loans to compliance with the MSSA. Massachusetts' statutory scheme for providing state-funded tuition assistance states that, "when applicable federal law requires, each applicant for assistance under any program established herein shall provide appropriate documentation to verify his compliance with the Military Selective Service Act in effect at the time of such application." Mass.Gen.L. ch. 15A, § 16.[3]

The constitutionality of the MSSA has been tested before, on the same grounds plaintiffs raise here. In 1981, the Supreme Court of the United States reversed a three-judge District Court's conclusion that the MSSA was unconstitutional. *Rostker,* 453 U.S. at 79, 101 S.Ct. 2646. The Court determined that Congress was entitled in the exercise of its constitutional powers over military affairs "to focus on the question of military need rather than 'equity'" and that the MSSA was constitutional despite its gender-based classification. *Id.* at 80–83, 101 S.Ct. 2646. According to the plaintiffs in *Rostker* and in this case, the alleged constitutional defect is the MSSA's authorization of the registration of males, but not females. *Id.* at 60, 101 S.Ct. 2646.

*Discussion*

In his motion to dismiss, Brodsky contends that, in light of *Rostker,* it represents a failure to state a claim to argue, as plaintiffs do, that this Court should reconsider the constitutionality of the MSSA because women are now permitted to and do serve in virtually all military units except those whose primary mission is direct ground combat.[4] The Court agrees. This Court views the *Rostker* decision as resting on two key factual underpinnings, at least one of which plaintiffs would have to show had changed in order to prevail.

---

**3.** Defendant Reilly notes correctly that the statutory language "when applicable federal law requires" is critical. If this Court determined that the MSSA were unconstitutional, there would be no applicable federal law and, thus, the requirement of verifying compliance would disappear. However, because this Court determines that the MSSA is constitutional, the Commonwealth's requirement that financial aid applicants comply with the MSSA's strictures is, by necessity, constitu-

tional also. Because the Court rules the MSSA is constitutional, it does not consider Reilly's arguments that separate and persuasive grounds exist for dismissing the case against him.

**4.** As it must on a motion to dismiss, the Court accepts as true all of the allegations in plaintiffs' complaint. *Gorski,* 290 F.3d at 473; *Alternative Energy,* 267 F.3d at 33; *Estate of Soler,* 63 F.3d at 53. Relative to service in combat, plaintiffs allege that: (1) in 1993,

The first of these was the governmental interest advanced by the MSSA's gender-based classification. The Supreme Court, after a comprehensive evaluation of the MSSA's legislative history, determined the government's interest to be the establishment of a system that would facilitate a draft *of combat troops*. *Rostker*, 453 U.S. at 76, 101 S.Ct. 2646. Plaintiffs have not plead any facts that would lead to a different conclusion, nor could they because the governmental interest in a piece of legislation is necessarily fixed at the time of its passage.[5]

The second factual underpinning key to *Rostker* was the ineligibility of women for combat. *Id.* at 76–77, 101 S.Ct. 2646. It was, after all, with that fact "firmly in mind" that the Supreme Court considered the constitutional claim before it. *Id.* at

77, 101 S.Ct. 2646. Rather than argue women have been made eligible for combat, however, plaintiffs concede that prohibiting women from combat remains military policy, even though no longer a part of statutory law.[6] The continuing prohibition in policy, even if no longer in statute, means that the second key fact on which the Supreme Court relied is also unchanged. It remains true, then, that "[m]en and women, because of the combat restrictions on women, are simply not similarly situated for purposes of a draft or registration for a draft." *Id.* at 78, 101 S.Ct. 2646. In such cases, the Constitution does not require "gestures of superficial equality." *Id.* at 79, 101 S.Ct. 2646.

Therefore, as the governmental interest advanced by the MSSA remains the preparation for a draft of combat troops and

Congress repealed the last statutory restrictions on the roles in which women may serve in the military; (2) also in 1993, the Secretary of Defense lifted restrictions on women flying combat aircraft in the Air Force and Navy; (3) virtually all positions in the Navy, the Coast Guard, and the Air Force are now open to women; (4) women currently serve on Navy combat ships and fly Navy and Air Force combat aircraft; (5) during Operations Desert Shield and Desert Storm, some 41,000 women served in naval, land, and air units that crossed into Iraq and Kuwait, received enemy fire, returned fire, and dealt with enemy prisoners, in roles including helicopter pilot, M60 machine gunner, truck driver, F-111F crew chief, combat signaler and intelligence analyst; (6) during the same actions, American women were among prisoners of war captured by enemy troops; and (7) during those actions, five women soldiers were killed by hostile fire.

5. In any case, Congress' post-*Rostker* statements on the subject belie any argument that a different governmental interest has persuaded Congress to keep the MSSA in effect. *See infra* pp. 133–134.

6. *See* National Defense Authorization Act for Fiscal Years 1992 and 1993, Publ. L. No. 102–

190 (Dec. 5, 1991) (lifting the ban on the assignment of women to combat aircraft); National Defense Authorization Act for Fiscal Year 1994, Pub.L. No. 103–160 (Nov. 30, 1993) (lifting the ban on the assignment of women to certain combat ships). Plaintiffs state in their complaint that as a matter of military policy, women continue to be prohibited from serving in units below the brigade level whose primary mission is to engage in direct combat on the ground, using individual- or crew-served weapons while being exposed to hostile fire and to a high probability of direct physical contact with the hostile force's personnel.

Plaintiffs' further argument that an increase in the number of female volunteers in the nation's military force warrants an outcome contrary to *Rostker* also is unavailing. As the Supreme Court noted in *Rostker*, the number of women volunteers is unrelated to the aims of the registration system. 453 U.S. at 80 n. 16, 101 S.Ct. 2646. "Women volunteers do not occupy combat positions, so encouraging women to volunteer is not related to concerns about the availability of combat troops. In the event of a draft, however, the need would be for combat troops or troops which could be rotated into combat." *Id.* Accordingly, the Court considers the increasing numbers of female volunteers irrelevant to this case.

plaintiffs concede women continue to be barred from ground combat, plaintiffs have failed to state a claim.

Furthermore, the fact that Congress has reconsidered the constitutionality of excluding women from selective service registration since *Rostker* is "certainly" reason to treat its conclusion with the "customary deference" accorded a coequal branch of government whose members take the same oath to uphold the Constitution as members of the judiciary. *See Rostker,* 453 U.S. at 64, 101 S.Ct. 2646. In addition, the great deference owed Congress in the area of national defense and military affairs counsels this Court to heed the legislative branch's disavowals since *Rostker* of any intent to open registration to women. For example, in a report accompanying the National Defense Authorization Act for Fiscal Year 1994, which repealed some of the statutory bars to women in combat, the House Armed Services Committee noted that the decision to lift those prohibitions should not "be construed as tacit committee concurrence in an expansion of the assignment of women to units or positions whose mission requires routine engagement in direct combat on the ground, *or be seen as a suggestion that selective service registration or conscription include women.*" H.R. Rept. 103–200 (July 30, 1992), at 283 (report accompanying Pub.L. No. 103–160) (emphasis added).[7] To similar effect is the report of the congressionally authorized Presidential Commission on the Assignment of Women in the Armed Forces. In this 1992 report, the "Commission adopted a blanket recommendation against imposing any requirements on women with regard to conscription, *regardless of the assignments for which they are eligible* in the Armed Forces. It determined that important government interests exist which are substantially related to excluding women from draft registration, e.g., the military effectiveness of our land combat forces." Presidential Commission on the Assignment of Women in the Armed Forces, Report to the President, November 15, 1992 (GPO 1992), at 40 (emphasis added).

Of course, "[n]one of this is to say that Congress is free to disregard the Constitution when it acts in the area of military affairs. In that area, as any other, Congress remains subject to the limitations of the Due Process Clause." *Rostker,* 453 U.S. at 67, 101 S.Ct. 2646. Nevertheless, it is not for a district court to substitute its "judgment of what is desirable for that of Congress," or its "evaluation of evidence for a reasonable evaluation by" Congress. *Id.* at 68, 101 S.Ct. 2646. By pressing this case at this time, however, the plaintiffs have asked the Court to do exactly that. On January 7, 2003, bills were introduced in the House and Senate that would require young men *and women* to register with the Selective Service System. *See* H.R. 163, 108th Cong., § 10; S. 89, 108th Cong., § 10. It would be the very opposite of "healthy deference" for this Court to hear this case while such legislation is pending before Congress, the body to which the Constitution assigns the power over the nation's military. *See Rostker,* 453 U.S. at 66, 101 S.Ct. 2646.

As noted earlier, the Constitution expressly grants the power "[t]o raise and support Armies," "[t]o provide and maintain a Navy," and "[t]o make Rules for the Government and Regulation of the land

---

**7.** Official public records are among those documents not part of the pleadings which a district court may consider in ruling on a motion to dismiss for failure to state a claim. *In re Colonial Mortgage Bankers Corp.,* 324 F.3d 12, 16 (1st Cir.2003); *Boateng v. Inter-American Univ., Inc.,* 210 F.3d 56, 60 (1st Cir.2000); *Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993).

and naval Forces," *Art. I, § 8, cls. 12—14,* to Congress and not to the Judiciary. The Judiciary has neither the power nor the competence to undertake these awesome responsibilities and, thus, should defer to the will of Congress in its carrying out the most fundamental and the most crucial purpose for the establishment of government—"to provide for the common defence"[8] to insure the security of the United States. If a deeply-rooted military tradition of male-only draft registration is to be ended, it should be accomplished by that branch of government which has the constitutional power to do so and which best represents the "consent of the governed"—the Congress of the United States, the elected representatives of the people. Defendants' Motion to Dismiss is granted.

SO ORDERED.

---

8. Preamble to the Constitution of the United States.