Simonds v. Pan American          CV-03-011-M    09/30/03
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Don T. Simonds,
        Plaintiff

        v.                                    Civil No. 03-11-M
                                              Opinion No. 2003 DNH 164
Pan American Airlines, Inc.,
a/k/a Pan American Airways Corp.,
a/k/a Pan American Airways, Inc.;
David A. Fink; and P. Barry Bermingham,
        Defendants


                            O R D E R


        In November of 2002, Don T. Simonds filed this action

against his former employer and two of its corporate executives

(collectively, "Pan Am") in Florida state court, claiming he was

discharged in violation of Florida's Whistleblower's Act, Fla.

Stat. § 448.101, et seq.  Pan Am then removed the proceeding to

the United States District Court for the Middle District of

Florida.  Subsequently, the matter was transferred to this court,

pursuant to 28 U.S.C. § 1404.


        Pending before the court is Pan Am's motion to dismiss, on

grounds that Simonds' claim is pre-empted by the Airline

Deregulation Act, 49 U.S.C. § 41713 (the "ADA").  Alternatively,

pointing to the fact that Simonds' already arbitrated (and won) a claim that he was wrongfully discharged under a collective bargaining agreement, Pan Am says his whistleblower claim is barred by the doctrine of res judicata.  Simonds objects.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory."  Martin v. Applied Cellular Tech., Inc., 284 F.3d 1, 6 (1st Cir. 2002).  Dismissal is appropriate only if "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  See also Gorski v. N.H. Dep't of Corr., 290 F.3d 466, 472 (1st Cir. 2002) ("The issue presently before us, however, is not what the plaintiff is required ultimately to prove in order to prevail on her claim, but rather what she is required to plead in

2

order to be permitted to develop her case for eventual adjudication on the merits.") (emphasis in original).

## Background[1]

Viewed in the light most favorable to Simonds, the pertinent facts appear as follows. Simonds is an experienced commercial pilot, with approximately 20,000 hours of flight time, who, over the course of his lengthy career, had never been disciplined by an employer or the FAA. On January 3, 2001, he was scheduled to fly Pan Am Flight 2 - a four-leg flight from Portsmouth, New Hampshire to Bangor, Maine, to Pittsburgh, Pennsylvania, to Sanford, Florida, and then back to Portsmouth. The entire trip should have required approximately 8 hours of flight time and 13 and one-half hours of duty time. That schedule would have been well within the requirements of a Federal Aviation Regulation ("FAR"), which provides that a pilot may not be assigned, nor may

---

[1] To provide a more complete picture of the background to the parties' current dispute, the court has drawn some of the facts from the opinion in Pan Am. Airways Corp. v. Air Line Pilots Assoc., Int'l, 206 F. Supp. 2d 12 (D.D.C. 2002), in which the court affirmed a decision by an arbitration panel concluding that Pan Am lacked just cause to terminate Simonds' employment. Neither the arbitrators' decision nor the district court's opinion affirming that decision is at issue in this case.

he or she accept assignment of, a schedule that requires duty for longer than 16 hours in any 24-hour period.  14 C.F.R. § 121.471.

As it turned out, however, Simonds' aircraft experienced mechanical problems after successfully completing the first three legs of the scheduled journey.  Following a lengthy delay on the ground in Sanford, Simonds concluded that he could no longer complete his flight without running afoul of the 16-hour rule set forth in the pertinent FAR.  Accordingly, he reported his concerns to Pan Am's director of operations, Captain Jim Baker.[2]

After discussing his interpretation of the pertinent FAR with Baker, Simonds informed Baker that he and the two other members of his flight crew would not fly the aircraft.  Baker disagreed with Simonds' interpretation and told Simonds and his crew that they were exposing themselves to serious discipline if they did not complete the flight.  Notwithstanding that warning, Simonds left the aircraft (with 149 passengers on board) and checked into a local hotel.  Baker then terminated his employment

---

[2]    If the FAA determined that Simonds had violated the FAR, it could have punished him by suspending his pilot's license for 15 to 90 days, without pay.  Pan Am. Airways, 206 F. Supp. 2d at 15 n.2.

for insubordination.  The other two crew members eventually agreed to fly, after Pan Am threatened them with termination as well.  They and Captain Baker then completed the flight back to Portsmouth.[3]

Subsequently, the Air Line Pilots Association filed a grievance on behalf of Simonds.  The matter was presented to a panel of three arbitrators and Simonds prevailed.  Specifically, the arbitration panel concluded that Pan Am did not have just cause to terminate him for insubordination.  It then directed the company to reinstate Simonds to his former position, with full back pay, interest, and other benefits.  That decision was affirmed on appeal to the United States District Court for the District of Columbia.  Pan Am. Airways, supra.

Five months later, Simonds brought this action in Florida state court, seeking damages under the Florida whistleblower statute.  As noted above, that suit was removed to federal

---

[3]     Initially, the FAA brought enforcement actions against Pan Am and the other two members of Simonds' crew, but eventually withdrew the complaints against the crew members because they flew under threat of losing their jobs.  Pan Am. Airways, 206 F. Supp. 2d at 16.

5

district court and, eventually, transferred to this court. Because the court agrees that Simonds' state law employment discrimination claim is pre-empted by the ADA, it need not address the merits of Pan Am's alternate basis for dismissal.

**Discussion**

I.   Simonds' State Law Claim.

Simonds asserts that when Pan Am discharged him for refusing to fly the last leg of his assigned route (which he believed would have violated a FAR), it violated Florida's whistleblower statute.  That statute provides, in pertinent part:

> An employer may not take any retaliatory personnel
> action against an employee because the employee has:
>
> * * *
>
>> (3) Objected to, or refused to participate
>> in, any activity, policy, or practice of the
>> employer which is in violation of a law,
>> rule, or regulation.

Fla. Stat. § 448.102.

In support of his view that his state whistleblower claim is not pre-empted by the ADA, Simonds advances two arguments,

6

neither of which is particularly compelling.  First, while he acknowledges the pre-emption provision of the ADA, he points out that the underlying arbitration decision (which is not at issue in this case) was based on an application of the Railway Act, not the ADA.  That, of course, is true.  It does not, however, undermine Pan Am's assertion in this case: that provisions of federal law (i.e., the ADA) expressly pre-empt Simonds' state law whistleblower claim.

Next, Simonds points to a section of the Florida whistleblower statute which provides that, "[t]his act does not diminish the rights, privileges, or remedies of an employee or employer under any other law or rule or under any collective bargaining agreement or employment contract."  Fla. Stat. § 448.105.  Presumably, in enacting that statutory provision, the Florida legislature intended to make clear that the rights and remedies available under the state whistleblower statute were not exclusive.  That is to say, to the extent other causes of action and remedies exist (e.g., a claim for breach of contract), they remain available to a claimant seeking compensation under the whistleblower statute.  In short, the Florida whistleblower

7

statute expressly provides that it does not pre-empt any other statutory or common law remedies available to an aggrieved employee.

Importantly, however, the state statutory provision cited by Simonds does not (nor could it) serve to nullify the pre-emptive effect of federal law on a claim under that statute. <u>See generally</u> U.S. Const. art. VI. <u>See also</u> <u>Rose v. Arkansas State Police</u>, 479 U.S. 1, 3 (1986) ("There can be no dispute that the Supremacy Clause invalidates all state laws that conflict or interfere with an Act of Congress."); <u>Louisiana Public Serv. Comm'n v. Federal Communications Comm'n</u>, 476 U.S. 355, 368 (1986) ("The Supremacy Clause of Art. VI of the Constitution provides Congress with the power to pre-empt state law.").

II.  <u>The Airline Deregulation Act's Pre-emption Provisions</u>.

The pre-emption provision of the ADA states, in pertinent part:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law <u>related to</u> a price, route, or <u>service of an air carrier</u> . . . .

49 U.S.C. § 41713(b)(1) (emphasis supplied). In interpreting that statutory provision, the Supreme Court has afforded it extremely broad scope. See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992) ("[T]he key phrase, obviously, is 'relating to.' The ordinary meaning of these words is a broad one – 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with' – and the words thus express a broad pre-emptive purpose.") (citation omitted). See also American Airlines, Inc. v. Wolens, 513 U.S. 219 (1995). In giving the pre-emption provision an expansive scope, the Court noted the similarity between the ADA's pre-emption provision and that of ERISA and concluded that it was appropriate to "adopt the same standard here: State enforcement actions having a connection with, or reference to, airline 'rates, routes, or services' are pre-empted" under the ADA. Morales, 504 U.S. at 384.

III. The Federal Whistleblower Protection Program.

In 2000, Congress enacted the Whistleblower Protection Program ("WPP") as part of the ADA. 49 U.S.C. § 42121. The

9

Court of Appeals for the Eight Circuit has described that program as follows:

> The [WPP] protects air-carrier employees who report actual or alleged air-carrier safety violations or who file proceedings regarding actual or alleged air-carrier safety violations. The Program is a detailed and comprehensive regulatory scheme. It specifies four classes of protected employee conduct, prescribes both the evidentiary and legal standards the Secretary of Labor must use to determine whether a violation has occurred and the remedy to be ordered, coordinates the duties and involvement of two separate federal agencies, and even includes modest penalties to deter unfounded or inequitable complaints. The Program protects employees from retaliation by their employers for a variety of "whistleblowing conduct" based on any actual or alleged federal air-safety violation.

Botz v. Omni Air Int'l, 286 F.3d 488, 491 (8th Cir. 2002).

IV.  Simonds' State Law Claim is Pre-empted.

The question presently before the court is whether the ADA, as amended by the WPP, pre-empts Simonds' claim under the Florida Whistleblower's Act.  It does.

The Court of Appeals for the Eleventh Circuit recently addressed precisely this question and concluded that the plaintiff's claim under the Florida Whistleblower's Act was not

10

pre-empted by the ADA. Branche v. Airtran Airways, Inc., __ F.3d __, 2003 WL 21983019 (11th Cir. Aug. 21, 2003). Nevertheless, the court noted that its holding was limited to the specific facts before it.

> As our employment of this analytical modality indicates, it is the specifics of the retaliation claim, not the whistleblower statute, that appropriately determine pre-emption. Thus, retaliation claims brought under state whistleblower statutes must be evaluated on a case-by-case basis to determine the connection between the action in question and airline services.

Id. at * 12 n.9 (emphasis supplied). In reaching that conclusion, the court cited the Eight Circuit's opinion in Botz extensively.

In Botz, a flight attendant brought suit against her employer - an air carrier - under Minnesota's whistleblower statute, claiming she was wrongfully terminated when she refused a flight assignment she believed would violate a FAR. Holding that her claim was pre-empted by the ADA, the court concluded that "[w]hen applied to the facts surrounding [plaintiff's] discharge, the Minnesota whistleblower statute has a forbidden connection with air-carrier services." Botz, 286 F.3d at 494.

11

The court reasoned that because a flight attendant could, by refusing a flight assignment, force the carrier to cancel a flight, he or she could have a direct (and negative) impact on the carrier's "service."

> For any size carrier, a significant likelihood exists that the carrier will have to cancel the flight in order to comply with the FAR's flight-attendant staffing regulations. This is patently true when the flight attendant refuses the assignment within a few hours of the flight's scheduled departure. On that day at least, the air carrier will not be providing the service for which its customers have paid at one of its scheduled times. An air carrier cannot avoid this possibility even by adhering to every law, rule, and regulation - federal and state, for the Minnesota whistleblower statute authorizes refusals based on the flight attendant's objective, fact-based belief alone that the assignment is violative. <u>This authorization to refuse assignments, and the protections that the whistleblower statute provides, have a forbidden connection with an air carrier's service under any reasonable interpretation of Congress's use of the word "service."</u>

<u>Id.</u> at 495 (emphasis supplied).

With respect to the effect of the recently-enacted WPP, the court concluded that it did not evidence any Congressional intent to exclude from the ADA's broad pre-emption provision claims of the sort brought by the plaintiff.

12

> When it fashioned the WPP, Congress was surely aware of
> the ADA's express pre-emption provision.  It was
> presumably aware, as well, that the Supreme Court had
> determined that the provision had a broad application
> and should be given an expansive interpretation.  Given
> this, we would expect Congress to have directed
> language in the WPP to the issue of federal pre-emption
> only if it had been Congress's intent that the WPP <u>not</u>
> exert any pre-emptive effect upon state whistleblower
> provisions.

<u>Id.</u> at 497.  Accordingly, the court concluded that the "fact that the WPP now provides a comprehensive scheme for protecting the precise sort of air safety-related conduct [plaintiff] engaged in here, is . . . powerful evidence of Congress's clear and manifest intent to pre-empt state-law whistleblower claims related to air safety."  <u>Id.</u> at 496.

So it is in this case.  When he concluded that he could no longer takeoff in time to complete his assigned flight within the time limit prescribed by the pertinent FAR, Simonds refused to fly the plane and left the cockpit.  The plane was able to depart (albeit belatedly) only because his flight crew reluctantly returned to the plane (under threat of termination) and Pan Am was able to locate another pilot.  Nevertheless, Simonds' conduct, like that of the flight attendant in <u>Botz</u>, put in

13

jeopardy the air carrier's ability to render service to its passengers, by threatening to ground a plane. Simonds' state law whistleblower claim based upon that conduct is, therefore, pre-empted. See Botz, 286 F.3d at 494 ("When applied to the facts surrounding [plaintiff's] discharge, the [state] whistleblower statute has a forbidden connection with air-carrier services.").

The Eleventh Circuit's opinion in Branche does not suggest a different outcome. There, the plaintiff - an airline mechanic - brought a claim under Florida's whistleblower statute claiming that he was discharged for having reported past violations of various FARs. In holding that the plaintiff's claim was not pre-empted, the court distinguished the facts presented in Botz, observing:

> [I]n this case, the connection - or, indeed, the potential connection - between [plaintiff's] actions and air carrier services is far more attenuated than in Botz. As the Eight Circuit said, if a flight attendant refuses to fly and a replacement cannot be found, FAA regulations prevent the plane from leaving the gate, thereby disrupting service. Here, by contrast, we are not concerned with the withdrawal of clearance for a plane to take off based on mechanical concerns, but instead only with [plaintiff's] post hoc reporting of a FAA violation. . . . Had [plaintiff] claimed that Airtran fired him in retaliation for refusing to allow

14

<u>a plane to take off due to safety concerns</u>, this would present a situation closer to the one at issue in <u>Botz</u>.

<u>Branche</u>, at *12 (emphasis supplied).  In fact, the <u>Branche</u> court embraced the reasoning of the Eight Circuit, noting that "[a]s for the connection between retaliatory discharge claims and airline services, we do not dispute the Eighth Circuit's conclusion that <u>the grounding of an airplane is related to airline services</u>, in particular, the transport of passengers from one place to another."  <u>Id.</u> (emphasis supplied).[4]

## Conclusion

The opinions in both <u>Branche</u> and <u>Botz</u> counsel in favor of the conclusion that, under the facts presented in this case,

---

[4]    To be sure, the Eleventh Circuit did not agree with the <u>Botz</u> court's analysis of the pre-emptive effect of the WPP. Specifically, the Eleventh Circuit concluded that Congress's enactment of the WPP did nothing to alter the scope of the ADA's pre-emption provision, nor did it provide any additional insight into the scope which Congress intended that pre-emption provision to have.  <u>Branche</u>, at *13.  That fact does not, however, alter the outcome in this case since the conduct in which Simonds' engaged (and which the state whistleblower statute allegedly protects) was undeniably "related to . . . service of an air carrier," 29 U.S.C. § 41713(b)(1), insofar as it threatened to disrupt Pan Am's flight from Sanford, Florida, to Portsmouth, New Hampshire.  Consequently, <u>as applied in this case</u>, the Florida whistleblower statute has an impermissible effect on air carrier service and is, therefore, pre-empted.

Simonds' state law whistleblower claim is pre-empted. Because the allegedly protected conduct in which Simonds engaged created a real threat to Pan Am's ability to provide service to its customers (by threatening to ground the plane), his state whistleblower claim arising out of that conduct is necessarily pre-empted. See Morales 504 U.S. at 383-84. See also Branche, 2003 WL 21983019 at 12 n.9 (holding that "it is the specifics of the retaliation claim, not the whistleblower statute, that appropriately determine pre-emption.").

Because Simonds' state law whistleblower claim against Pan Am is, as a matter of law, pre-empted by the ADA, defendants' motion to dismiss (document no. 7) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

       **SO ORDERED.**

                                            _____
                                            Steven J. McAuliffe
                                            United States District Judge

September 30, 2003

cc: Arthur M. Freyre, Esq.
    Andrew W. Serell, Esq.
    Edward L. Artau, Esq.
    R. Matthew Cairns, Esq.
    John R. Fornaciari, Esq.