# United States Court of Appeals
## For the First Circuit

No. 99-1230

PETER A. BOATENG,

Plaintiff, Appellant,

v.

INTERAMERICAN UNIVERSITY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin, Senior Circuit Judge,

and Lipez, Circuit Judge.

Marybeth Holland for appellant.
Alberto G. Estrella, with whom William Estrella Law Offices,
PSC was on brief, for appellee.

April 18, 2000

**SELYA, Circuit Judge.** This litigation crashes on the shoals of res judicata. Because the district court correctly apprehended this reality, we affirm its entry of judgment in the defendant's favor.

## I. BACKGROUND

The relevant facts are undisputed. Dr. Peter Boateng, a black man from Ghana, began teaching accounting at the San Germán campus of InterAmerican University (the University) in 1988. Seven years later, the University denied him tenure but extended his probationary term as a professor for an additional year (during which time his candidacy was to be reevaluated). After unsuccessfully requesting reconsideration of the tenure denial, Boateng filed suit in the Puerto Rico Court of First Instance (Suit No. 1) on July 31, 1995. In his complaint, he invoked Puerto Rico law and alleged breach of contract and discrimination on the basis of race and nationality.

On March 16, 1996, Boateng amended his complaint to add an allegation that the University had retaliated against him by investigating charges that he had plagiarized some of his course materials. Following the completion of discovery and a six-day bench trial, the court entered a judgment in the University's favor. See Boateng v. InterAmerican Univ., No. I PE95-0122 (P.R. Super. Mar. 30, 1998). Boateng's efforts to undo the

judgment — including a motion for reconsideration, an abortive appeal to the Puerto Rico Circuit Court of Appeals, and a petition for certiorari to the Puerto Rico Supreme Court — were uniformly unavailing.

Whilst prosecuting Suit No. 1, Boateng plied a parallel course. On January 19, 1996, after what Boateng apparently considered to be an unfavorable change of venue in Suit No. 1, he filed a second suit in the United States District Court for the District of Puerto Rico (Suit No. 2). The only relevant difference between the amended complaint in Suit No. 1 and the complaint in Suit No. 2 was that the latter included a statement of claim under Title VII, 42 U.S.C. §§ 2000e to e-17.[1] On April 8, 1996, the University moved for dismissal of Suit No. 2 or, in the alternative, a stay. It attached to its motion an English translation of the complaint in Suit No. 1. The district court denied this motion.

The University filed another motion to dismiss Suit No. 2 on May 6, 1998, this time arguing that the judgment in Suit

---

[1]Boateng failed to obtain tenure at the end of the 1995-96 probationary period. His employment with the University was terminated on July 31, 1997 (when a final, nonrenewable one-year contract expired). He thereafter attempted to amend his complaint in Suit No. 2 to include allegations of discrimination in respect to these events. The district court denied the motion. On appeal, Boateng does not assign error to that ruling.

-4-

No. 1 (a copy of which was attached to the motion) barred further proceedings.  In response, Boateng asserted that the judgment was not final because, at that moment, the thirty-day appeal period (which he claimed had been tolled by the pendency of his motion for reconsideration) had not run.  This rebuttal argument collapsed on June 30, when the Puerto Rico Circuit Court of Appeals dismissed as untimely Boateng's appeal from the judgment entered in Suit No. 1.

Boateng's fallback position was that his federal court case dealt with "matters different from those of the state court case (Title VII)."  The district court rejected this argument and entered judgment in favor of the University.  See Boateng v. InterAmerican Univ., 36 F. Supp. 2d 60 (D.P.R. 1998).  This appeal ensued.

## II.  ANALYSIS

We review de novo orders granting summary judgment. See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990). In undertaking such review here, we bifurcate our analysis, first addressing a procedural point and then discussing the applicability of res judicata in the circumstances of this case.

### A.  Conversion.

Boateng posits that the court below effectively converted the University's second motion to dismiss into a

-5-

motion for summary judgment, expressly relying upon the complaint and judgment in Suit No. 1 in reaching its decision. He assigns error, contending that the court failed to furnish him advance notice and an opportunity to present opposing evidence before venturing outside the four corners of the pleadings in Suit No. 2. This contention derives from Fed. R. Civ. P. 12(b), which provides that:

> If, on a [Rule 12(b)(6)] motion . . . , matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

As a preliminary matter, we question whether this case actually involved conversion. After all, a court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993). And a court ordinarily may treat documents from prior state court adjudications as public records. See Henson v. CSC Credit Servs., 29 F.3d 280, 284 (7th Cir. 1994) (collecting cases). In light of these principles, it is at least arguable that this case does not involve conversion at all.

Having raised this point, we conclude that we need not decide it definitively. The University has not challenged the

fact of conversion, and we therefore assume, for argument's sake, that the court converted the motion. On that assumption, we consider Boateng's procedural argument.

We have interpreted Rule 12(b) as requiring some type of notice as a condition precedent to a court's conversion of a motion to dismiss into one for summary judgment. See, e.g., Collier v. City of Chicopee, 158 F.3d 601, 603 (1st Cir. 1998), cert. denied, 526 U.S. 1023 (1999). Withal, "this circuit does not mechanistically enforce the requirement of express notice of a district court's intention to convert a Rule 12(b)(6) motion into a motion for summary judgment. Instead, we treat 'any error in failing to give express notice as harmless when the opponent has received the affidavit and materials, has had an opportunity to respond to them, and has not controverted their accuracy.'" Chaparro-Febus v. International Longshoremen Ass'n, Local 1575, 983 F.2d 325, 332 (1st Cir. 1992) (quoting Moody v. Town of Weymouth, 805 F.2d 30, 31 (1st Cir. 1986) (per curiam)); see also Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83 (1st Cir. 1997) (explaining that "[t]he proper approach to conversion under [Rule 12(b)] is functional rather than mechanical"). Viewed against this mise en scène, Boateng's position is untenable.

The documents on which the district court relied were familiar to Boateng. The University submitted copies of those documents in the course of litigating Suit No. 2, and in all events, Boateng obviously possessed copies of both the complaint he himself had filed in Suit No. 1 and the judgment terminating that action. The motion to dismiss explicitly mentioned the complaint and the judgment, and rendered the court's reliance on those documents readily foreseeable. Furthermore, some seven months elapsed between the service of the University's second motion to dismiss and the district court's decision. During this interval, Boateng filed two responsive pleadings, one of which included a copy of a motion for reconsideration in Suit No. 1 (thus impliedly inviting the court to consider the record in that case). The short of it, then, is that Boateng was familiar with the proffered documents, had ample opportunity to respond to them, and, in fact, did so. By the same token, he had a full and fair chance to contest the accuracy of the proffered documents, but did not do so.[2]

_____

[2]In his brief, Boateng hints that, had he been given explicit notice of the court's intent to convert the motion, he would have submitted additional evidence in support of his position on the res judicata defense. When pressed at oral argument to elaborate on that possibility, however, Boateng's counsel was unable to identify any such evidence.

-8-

That ends the matter. No more was exigible to effect substantial compliance with the applicable notice requirement. See Collier, 158 F.3d at 603 (explaining that "the notice requirement [anent Rule 12(b)] can be satisfied when a party receives constructive notice that the court has been afforded the option of conversion — a phenomenon that occurs when, for example, the movant attaches to his motion, and relies on, materials dehors the pleadings"). If failing to announce the conversion entailed error at all — a matter on which we need not opine — the error was harmless. See Chaparro-Febus, 983 F.2d at 332.

## B. Res Judicata.

We turn now to the res judicata issue. In determining the preclusive effect of a state court judgment in federal court — and Puerto Rico is, for this purpose, the functional equivalent of a state, see Cruz v. Melecio, 204 F.3d 14, 18 n.2 (1st Cir. 2000) — the question is whether courts in the rendering state would ascribe preclusive effect to the judgment. See 28 U.S.C. § 1738; see also Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982). For a judgment to have preclusive effect in a subsequent action, Puerto Rico law requires "the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." P.R. Laws Ann. tit.

31, § 3343. Boateng concedes that the two suits involve identical parties, but asseverates that there is no perfect identity of "things" or "causes" between them. This asseveration cannot withstand scrutiny.

Puerto Rico courts do not interpret the phrase "perfect identity" literally. See Cruz, 204 F.3d at 19; Futura Dev. Corp. v. Centex Corp., 761 F.2d 33, 43-45 (1st Cir. 1985). For res judicata purposes, "[t]he thing corresponds basically to the object or matter over which the action is exercised." Lausell Marxuach v. Díaz de Yáñez, 3 P.R. Offic. Trans. 742, 745 (1975). The test for identity of "things" is whether a decision in the second action may contradict the prior adjudication. See A & P Gen. Contractors, Inc. v. Asociación Caná, 10 P.R. Offic. Trans. 987, 998 (1981). Similarly, "cause" refers to the main ground or origin of the action. See id. It thus becomes apparent that Puerto Rico, though a civil law jurisdiction, follows the general contours of the transactional approach in its res judicata jurisprudence. See Restatement (Second) of Judgments § 24(1) (1982) (explaining that a valid and final judgment extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose").

In this instance, the commonwealth court, after considering Boateng's claims arising from the denial of tenure and the plagiarism investigation, expressly held that "the University fully complied with its contractual responsibilities towards . . . Boateng" and that "the University did not discriminate against . . . Boateng due to his race, color or nationality." Boateng v. InterAmerican Univ., No. I PE95-0122 (P.R. Super. Mar. 30, 1998). The court also specifically found that Boateng had committed plagiarism. See id. The present action derives from the same nucleus of operative facts, and a ruling in Boateng's favor obviously would contradict these earlier determinations. We conclude, therefore, that the requisite identity of "things" and "causes" is present.

Boateng espouses a contrary view, relying heavily on the fact that Suit No. 2 included a Title VII claim whereas Suit No. 1 did not. This reliance is mislaid. As a general matter, a difference in the legal theories asserted in two suits that arise from the same transaction (or set of transactions) does not undermine the identity of causes between them. See Kale v. Combined Ins. Co., 924 F.2d 1161, 1166 (1st Cir. 1991). Specifically, under Puerto Rico law, such an "argument mistakes the legal cause of action for the factual 'cause' contemplated by Puerto Rico's preclusion statute: preclusion requires an

identity of the latter, not the former." <u>Baez-Cruz</u> v. <u>Municipality of Comerio</u>, 140 F.3d 24, 30 (1st Cir. 1998). As the Puerto Rico Supreme Court has explained, "cause" is "'the principal ground, the origin of the actions or exceptions raised and decided, and it must not be mistaken for the means of proof nor for the legal grounds of the claims adduced by the parties.'" <u>Lausell Marxuach</u>, 3 P.R. Offic. Trans. at 746 (quoting VIII-2 Jose Maria Manresa, <u>Comentarios al Código Civil Español</u> 301 (6th ed. 1967)). Accordingly, Boateng did not have a right to bring separate and successive suits on different legal theories arising out of a single nucleus of operative facts.

To be sure, in Puerto Rico, res judicata operates to preclude only claims that were or could have been raised in a previous suit.[3] <u>See</u> <u>Commonwealth</u> v. <u>Sociedad Civil Agricola e Industrial</u>, 4 P.R. Offic. Trans. 546, 554 (1975) (per curiam); <u>Mercado Riera</u> v. <u>Mercado Riera</u>, 100 P.R.R. 939, 949 (1972). Endeavoring to wrap himself in this exception, Boateng avers that he could not have brought a Title VII claim when he

---

[3]The same rule obtains in other jurisdictions that follow the transactional approach. <u>See</u>, <u>e.g.</u>, <u>Massachusetts Sch. of Law at Andover, Inc.</u> v. <u>American Bar Ass'n</u>, 142 F.3d 26, 38 (1st Cir. 1998) (applying federal law); <u>Fiumara</u> v. <u>Fireman's Fund Ins. Cos.</u>, 746 F.2d 87, 91 (1st Cir. 1984) (applying New Hampshire law).

commenced Suit No. 1 because he did not receive a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC) until October 24, 1995 (nearly three months after he commenced Suit No. 1).  This argument fails for two reasons.

For one thing, Boateng did not advance this point in the lower court.  It is, therefore, procedurally defaulted.  "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal."  Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992).  Because the record here reflects no sufficiently excusatory circumstances, Boateng has forfeited the right to hawk the unavailability of the right-to-sue letter in this court.

For another thing, on facts less defendant-friendly than those of this case, several courts have held Title VII claims to be precluded by a prior adjudication even though a right-to-sue letter had not been obtained until after final judgment had entered in the first action.  See Heyliger v. State Univ. & Community College Sys., 126 F.3d 849, 854-56 (6th Cir. 1997); Herrmann v. Cencom Cable Assocs., 999 F.2d 223, 225 (7th Cir. 1993); Woods v. Dunlop Tire Corp., 972 F.2d 36 (2d Cir. 1992).  A fortiori, there is no principled basis for reaching a

different result where, as here, the plaintiff obtained permission to sue from the EEOC while his first suit was still pending.

This conclusion seems particularly well justified because Boateng largely controlled the timing of the relevant events (for example, he could have sued a few months later). More than two years elapsed between his receipt of the right-to-sue letter and the entry of final judgment in Suit No. 1. During that interval, he could easily have amended his complaint in Suit No. 1 to include the Title VII claim: state courts have concurrent jurisdiction over Title VII claims, see Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820 (1990), and leave to amend pleadings in the Puerto Rico courts is "freely given when justice so requires," P.R. R. Civ. P. 13.1. Indeed, Boateng successfully amended his complaint in Suit No. 1 shortly after receiving the right-to-sue letter, but elected not to mention Title VII. He has no one to blame but himself for failing to present the Title VII claim to the commonwealth court.

Boateng also asserts that the complaint in Suit No. 2 alleges acts of discrimination and retaliation that were not before the commonwealth court in Suit No. 1, thus dissipating the requisite identity of "things" and "causes." This assertion

-14-

is baseless. We have compared the pertinent materials from the two cases. The sole act of retaliation properly pleaded in Suit No. 2 concerned the plagiarism investigation — an allegation that was covered by Boateng's amended complaint in Suit No. 1 and discussed at length by the commonwealth court in its final judgment. See Boateng v. InterAmerican Univ., No. I PE95-0122 (P.R. Super. Mar. 30, 1998) (finding specifically that Boateng had committed plagiarism). Boateng may not have been obligated to bring the retaliation claim at the same time as his other claims, see Pleming v. Universal-Rundle Corp., 142 F.3d 1354 (11th Cir. 1998); Herrmann, 999 F.2d at 227, but, having done so, he cannot escape the preclusive effect of the commonwealth court judgment as to this claim.

We have one more bridge to cross. Noting that Puerto Rico courts ascribe preclusive effect only to judgments that are final and unappealable, see Cruz, 204 F.3d at 20-21, Boateng maintains that his appeal from the commonwealth court judgment was still pending when the federal district court ruled (and that, therefore, the ruling cannot stand). This argument is unpersuasive. Even if Boateng's facts are correct — which seems unlikely considering that the Puerto Rico intermediate appellate court dismissed his appeal as untimely some five months before the federal district court acted — it is undisputed that the

-15-

Puerto Rico Supreme Court has now denied certiorari, leaving Boateng with no other recourse in the commonwealth courts. Thus, the judgment in Suit No. 1 is now indisputably final and unappealable. We will not engage in the empty gesture of remanding this case for entry of a new order reaching the same result. See Aoude v. Mobil Oil Corp., 862 F.2d 890, 895 (1st Cir. 1988); cf. Equitable Life Assur. Soc'y v. Porter-Englehart, 867 F.2d 79, 84 n.3 (1st Cir. 1989) (refusing to engage in "an elaborate game of ring-around-the-rosy" whereby the parties would end up exactly where they had begun).

## III. CONCLUSION

To recapitulate: (1) the district court's failure to provide explicit notice that it planned to convert the motion to dismiss to one for summary judgment, if error at all, was harmless under the circumstances because Boateng received the extrinsic materials relied upon by the district court, had ample opportunity to respond to them, and did not question their accuracy; and (2) the fact that the commonwealth court's judgment in a suit involving identical parties, causes, and things is now final and unappealable confirms the district court's founded conclusion that res judicata bars the present action.

We need go no further.  Boateng had a full bite of the apple — and the choice of the bite was his.  He is not entitled to another nibble.

**Affirmed**.