Maria **VENEGAS HERNANDEZ,**
et al., Plaintiffs,

v.

**PEER INTERNATIONAL
CORPORATION, et
al., Defendants.**

No. CIV. 01–1215(JAF).

United States District Court,
D. Puerto Rico.

June 20, 2003.

Benicio Sanchez–Rivera, Heath W. Hoglund, San Juan, PR, Carlos M. Sanchez–La–Costa, Akerman Senterfitt, Miami, FL, for Plaintiffs.

Barry I. Slotnick, Jacques M. Rimokh, Loeb & Loeb, LLP, New York City, Francisco A. Besosa, Adsuar, Muniz, Goyco & Besosa, San Juan, PR, Angel N. Caro–Padilla, Ciudad Universitaria, Trujillo Alto, PR, for Defendants.

### OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, María Venegas–Hernández, Rafael Venegas–Hernández, Yeramar Venegas–Velázques and Guillermo Venegas–Lloveras, Inc., ("Plaintiffs"), bring the present complaint against Defendants Peer, a/k/a Peer International Corporation and/or Southern Music Company; ACEMLA de Puerto Rico, Inc. ("Defendant ACEMLA"); Latin American Music Company ("Defendant LAMCO"); Luis Raúl Bernard ("Defendant Bernard"); José L. Lacomba ("Defendant Lacomba"); Lucy Chávez Butler ("Defendant Chávez Butler"); and unnamed individuals and corporations (collectively "Defendants"). *Docket Document No. 1.* Plaintiffs allege copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101–513 (1996 & Supp.2003). Plaintiffs request monetary and injunctive relief, as well as attorney's fees. *Id.*

Plaintiffs move for partial summary judgment based on *res judicata. Docket Document No. 33.* Codefendants LAMCO, ACEMLA, Bernard, Chávez Butler, and Lacomba oppose the motion. *Docket Document No. 35.*

### I.

#### Factual and Procedural Synopsis

Unless otherwise indicated, we have gathered these facts from Plaintiffs' motion for summary judgment and Defen-

dants' opposition. *Docket Document Nos. 33, 35.*

Defendant LAMCO is a New York corporation authorized to do business in Puerto Rico. Defendant ACEMLA is a corporation registered with the Puerto Rico Department of State. Both Defendant LAMCO and ACEMLA are engaged in the representation of authors and composers through the registration and protection of their copyrights. Defendant LAMCO and ACEMLA grant licenses to the copyrighted work of their represented composers and authors, and, *inter alia*, demand and collect royalty payments. Defendant Bernard is the president of Defendants LAMCO and ACEMLA.

Composer Guillermo Venegas Lloveras ("decedent") passed away on July 23, 1993. Defendant Lucy Chávez Butler was married to Guillermo Venegas Lloveras and is Venegas Lloveras' widow. Defendant Chávez Butler is presently married to Defendant Lacomba.

Plaintiffs Rafael Venegas Hernández, María Venegas Hernández, Guillermo Venegas Hernández, and Yaremar Venegas Vázquez are the children and heirs of Guillermo Venegas Lloveras.

On October 20, 1997, Defendant Chávez Butler sued the present plaintiffs in the Superior Court of Arecibo, requesting that the trial court determine her participation in the decedent's estate for the purpose of terminating the community property that existed between Defendant Chávez Butler and Plaintiffs. *Docket Document No. 33, Exh. 1.* Plaintiffs answered the complaint, and offered several affirmative defenses, alleging, *inter alia*, that the copyrights of the decedent's songs were not community property according to both local law and the Federal Copyright Act. Plaintiffs also filed a counterclaim alleging that Defendant Chávez Butler had been unlawfully licensing and managing the decedent's copyrights. On September 22, 1999, the

Superior Court issued an Opinion, finding that the rights to the decedent's musical work belonged to his children. The court also concluded that it had no jurisdiction over the Plaintiffs' copyright claims. Defendant Chávez Butler appealed the decision, which was affirmed by the Court of Appeals on January 28, 2000.

On February 2, 2001, Plaintiffs filed the present claim requesting injunctive and monetary relief premised on copyright infringement. *Docket Document No. 1.* On March 22, 2002, Plaintiffs filed a motion for summary judgment, *Docket Document No. 33*, averring that a state court had already determined that Plaintiffs are the rightful owners of Venegas–Lloveras songs, and that we are precluded from revisiting this issue by *res judicata*. Specifically, Plaintiffs assert that the Superior Court decision fully resolved the issue of copyright ownership in this case.

Defendants LAMCO, ACEMLA, Bernard, Chávez Butler, and Lacomba oppose the motion, arguing that the state court specifically declined to determine ownership over the copyright rights because the Federal Copyright Act preempted review. *Docket Document No. 35.* In the alternative, they argue that § 304 of the Copyright Act grants Defendant Chávez Butler an interest in the renewal rights of the decedent's songs, and that this issue was not resolved by the state courts. *Id.*

## II.

### *Motion for Summary Judgment*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P. 56(c); *see Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgement, bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

## III.

### *Analysis*

Plaintiffs urge this court to apply *res judicata*, claiming that the state court already found that Plaintiffs own the rights to Guillermo Venegas Lloveras' songs. *Docket Document No. 33*. Plaintiffs' position is that the Arecibo courts decided all issues related to Venegas' copyrights. Defendants counter that the Arecibo Superior Court declared itself without jurisdiction to review the licensing and patrimonial rights of the parties over the musical compositions created by Guillermo Venegas Lloveras, and that this issue was, therefore, not resolved by the state courts. *Docket Document No. 35*.

The doctrine of *res judicata* prohibits a claim from being litigated repetitiously outside of the normal appeals pro-

cess and furthers the goals of finality and certainty. *Futura Dev. Corp. v. Centex Corp.*, 761 F.2d 33, 42 (1st Cir.1985). *Res judicata* generally "binds parties from litigating or relitigating any issue that was or could have been litigated in a prior adjudication and prevents claim splitting." *Id.* Under 28 U.S.C. § 1738, federal courts are required to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State in which the court resides. *Id.* Thus, Puerto Rico law determines the application of *res judicata* in the present case. *Id.* For *res judicata* to apply, three requirements must be met: "(1) a final judgment on the merits in an earlier action; (2) a sufficient identity between the parties in the two suits; and (3) a sufficient identity of the causes of action in the two suits." *Ortiz–Cameron v. Drug Enforcement Admin.*, 139 F.3d 4, 5 (1st Cir.1998) (citing *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 34 (1st Cir.1996)); *see also Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 61 (1st Cir.2000).

Defendants do not contest that, for the purposes of *res judicata*, there was a final judgment in the state case. They do not contest that the parties here are identical to those in the state court. However, Defendants question Plaintiffs' assertion that the state court determined who owns the copyrights at issue here.

## A. Copyright Act

Under the Copyright Act, the owner of a copyright has the exclusive right to, *inter alia*, "do and to authorize" any of the following:

(1) to reproduce the copyrighted work in copies or phonorecords;

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending . . . .

17 U.S.C. § 106.

"[A]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." 17 U.S.C. § 501(a); *see also* 17 U.S.C. § 106. Under 17 U.S.C. § 501(b), only "the legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is an owner of it."

■ In order to succeed with a copyright infringement case, the plaintiff must prove " '(1) ownership of a valid copyright, and (2) [unauthorized] copying of constituent elements of the work that are original.' " *Saenger Org., Inc. v. Nationwide Ins. Licensing Assoc.*, 119 F.3d 55, 59 (1st Cir.1997) (quoting *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir. 1995)). Under 17 U.S.C. § 201, ownership of a copyright may be transferred by bequest in a will.

## B. Res Judicata

Plaintiffs in this case claim that a previous state case determined who, between Defendant Chávez Butler and Plaintiffs, is the legitimate owner of the rights to the songs authored by the decedent. Plaintiffs read the Superior Court of Arecibo decision as holding that the musical work of the decedent is private and belongs to his heirs. Plaintiffs quote the Superior Court, which found that the "musical work in question belongs to his children, instituted as heirs in the same." *Docket Document No. 33.* Defendants disagree, and contend that the Superior Court only decided that the musical work was not part of the community property fund. Defendants note that the Arecibo court explicitly found itself without jurisdiction to determine those aspects of the case which fell under the

Copyright Act's purview and, therefore, conclude that the state court did not determine ownership. *Docket Document No. 33.* Defendants point to the Superior Court's discussion of the preemptive effect of the Copyright Act on state law as supporting their conclusion.

In the state declaratory and civil action, Defendant Chávez Butler sued the present plaintiffs, requesting that the trial court determine her participation in the decedent's estate for the purpose of terminating the community property that existed between Defendant Chávez Butler and Plaintiffs. *Docket Document No. 33, Exh. 1.* Plaintiffs answered the complaint, and offered several affirmative defenses, alleging, *inter alia,* that the copyrights of the decedent's songs were not community property according to both local law and the Federal Copyright Act. Plaintiffs also noted that most of the musical compositions in question were composed before Defendant Chávez Butler's marriage to the decedent and were therefore not community property. *Id.* In addition, Plaintiffs filed a third party claim against present Co–Defendants ACEMLA and Lacomba, asserting that they induced Defendant Chávez Butler to sign an invalid and illegal agreement granting Defendant ACEMLA the rights to the decedent's musical work. Plaintiffs added a counterclaim, averring, *inter alia,* that Defendant Chávez Butler illegally and negligently continued managing, licensing and transferring the rights to the decedent's work.

Defendant Chávez Butler filed a motion to dismiss the counterclaim, protesting that the rights alleged by Plaintiffs were protected by the Federal Copyright Act, and that these claims were, therefore, outside the jurisdictional purview of the state courts.

On September 22, 1999, the Superior Court of Arecibo found that decedent Venegas' musical work was exclusive and that the rights therein fell to his named beneficiaries. However, the court determined that it had no jurisdiction over Plaintiffs' counterclaim contesting Defendant Chávez Butler's alleged improper licensing of the decedent's work. It agreed with Defendant Chávez Butler that the Federal Copyright Act preempted state review.

On appeal to the Circuit Court of Appeals, Defendant Chávez Butler claimed that the Superior Court had erred in finding that decedent Venegas' work was exclusive to the decedent and thus transferable in its entirety by testament. Defendant Chávez insisted that the determination of ownership of the patrimonial right was preempted by the Federal Copyright Act, and that, therefore, the state court had acted outside its jurisdiction. *Id.*

The Puerto Rico Circuit Court of Appeals found that, while federal law exclusively governs the legal or equity rights within the general copyright scope, state law expressly governs the rights of succession of intellectual property. *Id.* Thus, the lower court "had exclusive jurisdiction for the validation and execution of testaments in which there exists intellectual property." *Id.*

Furthermore, under Puerto Rico state law, "all the marriage assets are considered joint property 'as long as it is not proven that they belong privately to the husband or wife.'" *Id.* (citing 31 L.P.R.A. § 3647 (1990) and *Universal Funding Corp. v. Registrador,* 133 D.P.R. 549, 552 (1993)). The appellate court found that

> [t]here are assets that by their very personal nature belong exclusively to their holder, even though for their acquisition funds were to have been allotted from the joint capital [,] or the industry, salary or work of one or both of

the spouses was employed. These are so inextricably tied to the immanent qualities of the person, that they could not be properly classified as 'joint property.'

*Docket Document No. 33, Exh. 1.* "It is known that the author, composer or creator of a work of art, does it based on his capacity, skills and innate personal talent." *Id.* As such, the intellectual property arising from the individual's work is exclusive to him, is not joint property, and does not become part of the community property. Thus, the court concluded,

> [t]he authorship rights over Mr. Guillermo Venegas' musical work is a private asset inherent to his person. What [Defendant Chávez Butler] would be entitled to would be to the fruits generated by the exploitation of said rights during the duration of the marriage. As it well appears in the testament executed by him and in the agreement subscribed by the parties with regard to the division of the inheritance, the musical work in question belongs to his children, instituted as heirs in the same.

*Id.*

Defendants correctly note that the Copyright Act preempts state law in certain respects.[1] In broadly preempting state statutory and common law copyright regulation, Congress sought to enhance predictability and certainty of copyright ownership by establishing a "uniform method for protecting and enforcing certain rights in intellectual property," *Daboub v. Gibbons,* 42 F.3d 285, 288 (5th Cir.1995). However,

[n]othing in ... [the Copyright Act] annuls or limits any rights or remedies under the common laws or statutes of any State with respect to ... [a work] that does not come within the subject matter of copyright ... [or] activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright.

17 U.S.C. § 301(b).

■ In Puerto Rico, intellectual property right is composed of two rights: a moral right that protects the link between the author and her work, and a patrimonial right that grants her a monopoly over the exploitation of the work. *Cotto Morales v. Rios,* 140 D.P.R. 604, 613–616 (1996). The patrimonial right is defined as the right to, *inter alia,* reproduce and perform the work, as well as the right to create derivative works, and to receive benefits derived from these acts. *Id.* The moral right protects the right to attribution of the work and the right to demand and protect the integrity of the work. This includes the right to prevent the alteration, truncation, and distortion of the work. *Harguindey Ferrer v. Universidad Interamericana de Puerto Rico,* 148 D.P.R. 13, 29 (1999); *Cotto Morales,* 140 D.P.R. at 620–623.

Defendants claim that the state court expressly refused to determine the patrimonial rights of the parties, and therefore did not determine the actual ownership of the decedent's work. *Docket Document No. 35.* They cite both the Superior and Circuit Court opinions as supporting their contention, noting that both the Superior

---

1. The Copyright Act provides, in relevant part, that:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as defined by section 106 in works of authorship that are fixed in a tangible medium of expression

and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this title ... No person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

and Circuit Court discussed the preemptive effect of the Copyright Act. *Id.* They also indicate that the courts specifically refused to entertain the infringement claims posed by the current Plaintiffs.

■ Defendants misapprehend the decisions reached by the Puerto Rico state courts. In essence, they erroneously equate the state court's determination of ownership of a copyright with a determination of the parties' patrimonial rights. However, the state case implicated legal rights that are not included within the preemptive scope of the Federal Copyright Act, and are in fact reserved to the states. As explained by the Puerto Rico state court, the Federal Copyright Act establishes that a copyright "may be transferred in whole or in part by any means of conveyance or by operation of law, and may be bequeathed by will or pass as personal property by the applicable laws of intestate succession." 17 U.S.C. § 201(d)(1). State courts have exclusive jurisdiction to probate wills disposing of copyright. 3 Nimmer on Copyright § 12.01 (hereinafter "Nimmer").

Thus, the state court disposed, as it could under its jurisdiction, of the first prong of a copyright infringement inquiry: the actual ownership of a copyright bequest. The Superior and Circuit courts found that, under state law, the decedent's copyright was not joint property and could therefore be bequeathed in its entirety to his children. *Docket Document No. 33.* However, the courts refused to delve into the second prong of a copyright inquiry,

whether there had been an unauthorized use of a copyright under federal law, because it implicated those patrimonial rights preempted by the Copyright Act.

Since the state court appropriately determined the ownership of the copyrights, we find that between the state court case and the case at bar there is the requisite identity of parties, causes, and finality. As such, we are precluded from revisiting the ownership of the copyrights here.

## C. *Section 304*

Defendants argue that, even if we find that Plaintiffs were devised ownership of the decedent's copyrights, this bequest did not grant them exclusive ownership of the renewal rights over those copyrights. *Docket Document No. 35.*

■ Copyright term of ownership is bifurcated between an original term and a renewal term. Renewal registration extends the copyright to its maximum length. Under the current provisions, an author may freely assign his interest in the original term. 17 U.S.C. § 201. A renewal term, however, may not be assigned. Copyright renewal rights do not pass under the usual rules of testamentary or intestate succession, but rather under the provisions of § 304 of the Copyright Act.[2] "Until the renewal period arrives, the renewal rights are not vested in anyone," and "[t]he most anyone can claim is the mere expectancy or contingent interest." *Capano Music v. Myers*, 605 F.Supp. 692, 695 (S.D.N.Y.1985). When the time for

---

**2.** 17 U.S.C. § 304 provides that

[a]ny copyright, the first term of which is subsisting on January 1, 1978, shall endure for 28 years from the date it was originally secured ... In the case of any other copyrighted work, including a contribution by an individual author to a periodical or to a cyclopedic or other composite work—
(i) the author of such work, if the author is still living,

(ii) the widow, widower, or children of the author, if the author is not living,
(iii) the author's executors, if such author, widow, widower, or children are not living, or
(iv) the author's next of kin, in the absence of a will of the author,
shall be entitled to a renewal and extension of the copyright in such work for a further term of 67 years.

renewal arrives, the renewal rights vest in specified designees in order of priority as listed in § 304. First, the rights vest in the author if he or she is alive during the renewal period. If the author is not living, the rights vest in the surviving spouse and children. Third, if the author is not survived by a spouse or children, the interests vest in the executor of the author's will. And fourth, in the absence of a will, the rights vest in the authors next of kin. *Id.* at 695.

"The evident purpose of [the renewal provision] is to provide for the family of the author after his death. Since the author cannot assign his family's renewal rights, [it] takes the form of a compulsory bequest of the copyright to the designated persons." *De Sylva v. Ballentine,* 351 U.S. 570, 582, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); *see also Fred Fisher Music Co. v. M. Witmark & Sons,* 318 U.S. 643, 651, 63 S.Ct. 773, 87 L.Ed. 1055 (1943) (if at the end of the original copyright period, the author is not living, "his family stand[s] in more need of the only means of subsistence ordinarily left to them." (citation omitted)). In addition, "unlike real property and other forms of personal property, [a copyright] is by its very nature incapable of accurate monetary evaluation prior to its exploitation." Nimmer § 9.02. A renewal term permits the author an opportunity to bargain the use of her copyright once the value had been ascertained. "An assignment by an author of his renewal rights made before the original copyright expires is valid against the world, if the author is alive at the commencement of the renewal period." *Miller Music Corp. v. Charles N. Daniels, Inc.,* 362 U.S. 373, 375, 80 S.Ct. 792, 4 L.Ed.2d 804 (1960). If the author dies before renewal vests, the statutory classes obtain a

> [r]enewal copyright free of any claim founded upon an assignment made by the author in his lifetime. These results follow not because the author's assign-

ment is invalid but because he had only an expectancy to assign; and his death, prior to the renewal period, terminates his interest in the renewal which … vests in the named classes.

*Id.*

Plaintiffs do not claim that the state court decided the issue of copyright renewals. They do not offer evidence that the decedent's entire body of work reached the renewal period during his lifetime and could therefore be transferred freely by him through testament. Instead, they suggest that since § 304 is silent as to the distribution between the "widow, widower or children," we should honor the decedent's wish to exclude Defendant Chávez Butler from copyright ownership. *Docket Document No. 49.* The language of § 304 grants renewal rights to the "widow *or* children," they aver, and since Plaintiffs are members of that renewal class, there is no conflict with the purposes of the statute. *Id.* Plaintiffs note that entertaining the issue of copyright renewal would force this court to "fashion from whole cloth a federal law of probate and intestate succession," which may ultimately upset the settled distribution of the decedent's estate. *Id.*

We first note that, notwithstanding the use of the word "or", the Supreme Court has found that the phrase "widow, widower or children" designates a single renewal class. In *DeSylva v. Ballentine,* 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), a widow renewed the copyrights in her deceased husband's work. The decedent's illegitimate son sued for his share in the renewal of the decedent's works. The decedent's widow countered that the "widow or widower" had priority over all other claimants in the renewal class. The Supreme Court found that, notwithstanding the use of the word "or," the author's "widow, widower, or children" is a single

class. *Id.* at 579–580, 76 S.Ct. 974. Consequently, the Court found that the author's illegitimate son was entitled to a share of the renewal term. *Id.* While the Court did not determine the actual apportionment of renewal rights amongst the class members, the case does suggest that the word "or" cannot be read to create unequal interests in different class members. *Id.* In *Bartok v. Boosey & Hawkes, Inc.,* 523 F.2d 941 (2d. Cir.1975), the Second Circuit reached a similar decision. In *Bartok,* a company paid copyright royalties to the decedent's estate, and the estate paid the royalties to the author's widow pursuant to a will that granted all income from the author's works to his wife for life and to his children after his wife's death. 523 F.2d at 942. The Second Circuit rejected this system and held that, for the remainder of the widow's life, royalties would be paid equally to the widow and the children of the decedent. *Id.*

These cases suggest that "an author cannot deprive his children, whether legitimate or illegitimate, of their renewal entitlement as prescribed in § 304 of the 1976 Act. Thus, under the current state of the law, an author may not allocate his renewal interests in a way which conflicts with section 304 of the 1976 Act." Rosenbloum, Michael, *Give Me Liberty and Give Me Death: The Conflict Between Copyright Law and Estates Law,* 4 J. Intell. Prop. L. 163, 197 (1995); *see also* Nimmer, § 9.04 (discussing renewal rights, and suggesting that "[b]ecause the Act fails to indicate any internal division for what has been established as a single class, it appears more logical to regard all members of the class—widow and children—alike, as equally sharing claimants.").

Furthermore, Plaintiffs' contention that renewal rights would ultimately disturb the decedent's estate is ultimately inapposite. If the works entered into their renewal period after the death of Mr. Vene-

gas, the renewal rights were never a part of the decedent's estate and never his to bequeath. *See Miller,* 362 U.S. at 375, 80 S.Ct. 792; *see also Abend v. MCA, Inc.,* 863 F.2d 1465, 1473–1476 (9th Cir.1988) (discussing the legislative history of the Copyright Act and the contingent interest created by renewal rights). Thus, what would be disturbed are the Plaintiffs' expectations that the decedent's will granted them a greater right than that which they actually possessed.

The parties unwittingly stumbled upon an unresolved wrinkle in copyright law for which we can find no factually similar precedent. Given the complexity of the issues, and the fact that the issues of copyright renewal arose in Defendants' ancillary arguments against *res judicata,* we simply decide here that the state court did not resolve the issue of copyright renewals and that this issue is not precluded by *res judicata.* Defendants suggest, but do not proffer evidence, that several of the decedent's works have reached their renewal period. Plaintiffs' discussion of § 304 can be read as a preemptive attempt to dispose of the issue before it actually arises. Rather than put the cart before the horse, we will defer the ultimate resolution of this issue until the parties develop evidence that implicates the statute, and fully develop arguments regarding the division of renewal rights within a class.

## IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** Plaintiffs' motion for partial summary judgment. *Docket Document No. 33.* We apply *res judicata,* and find that the state court has determined that Plaintiffs are owners of the decedent's copyright. However, because the state court did not review the issue of copyright re-

newal, we find that this issue is not precluded by the state court's determination.

**IT IS SO ORDERED.**