**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to lst Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-2305

LIONEL LUGO RODRIGUEZ, ET AL.,
Plaintiffs, Appellants,

v.

PUERTO RICO INSTITUTE OF CULTURE, ET AL.,
Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. Garcia-Gregory, U.S. District Judge]

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

Mauricio Hernández Arroyo for appellants.
Elisa Bobonis Lang for appellee Puerto Rico Institute of Culture.
Leticia Casalduc-Rabell, Assistant Solicitor General, with whom Roberto J. Sánchez Ramos, Solicitor General, and Kenneth Pamias Velázquez, Deputy Solicitor General, were on brief for appellees Bounds-Dávila, Ortiz-Colón, Maza, González-Valentín, Nazario, Martínez, Mas and Hernández.
Jose A. Acosta Grubb, with whom Fiddlep, González & Rodríguez, P.S.C., was on brief for appellee Municipal Revenue Collection Center.

May 5, 2004

**COFFIN**, <u>Senior Circuit Judge</u>.    For more than a decade, appellant Lionel Lugo Rodríguez has been pursuing an endorsement from the Puerto Rico Institute of Culture ("PRIC") for his shopping mall project in an historic district of San Germán, Puerto Rico. Such an endorsement is a prerequisite for the project to be classified as tax-exempt, and Commonwealth administrative and judicial proceedings concluded with denial of the endorsement. Appellant argues here that the process leading to that result was tainted by fraud, and he seeks a remedy under federal RICO and civil rights law, as well as under Puerto Rico tort provisions.    We agree with the district court that appellant already has had his day in court on this matter and that further deliberation on the particulars is barred by the doctrine of res judicata.    We decline to add another lengthy chapter to the saga and therefore provide background only as necessary to explain our conclusion.

The merits of appellant's claim that PRIC wrongfully denied him its endorsement were thoroughly considered by the Puerto Rico Circuit Court of Appeals, which reviewed the voluminous correspondence and other documentary evidence generated between 1988 and 1998, as well as the administrative transcript, and concluded that appellant "did not fulfill his obligation to show any irregularity in the proceedings."    Rather, the court determined that the PRIC endorsement was denied because appellant failed to satisfy the architectural requirements that the agency had

specified.  Appellant claims that newly discovered evidence of fraud entitles him to revisit this judgment.  Appellees respond with multiple bases for dismissing the federal claims, including appellant's alleged failure to adequately plead a RICO cause of action, Eleventh Amendment immunity, and the Rooker-Feldman doctrine.  With an exception we address below, see infra at note 2, we believe that the most direct path – and thus the most appropriate – is via preclusion principles.

Res judicata under Puerto Rico law precludes "only claims that were or could have been raised in a previous suit," Boateng v. Interamerican Univ., Inc., 210 F.3d 56, 62 (1st Cir. 2000), and there must be "'the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such,'" id. at 61 (quoting P.R. Laws Ann. tit. 31, § 3343).  The resemblance between the cases need not literally be "perfect," however.  Id.  "For res judicata purposes, '[t]he thing corresponds basically to the object or matter over which the action is exercised.'" Id. (quoting Lausell Marxuach v. Díaz de Yáñez, 3 P.R. Offic. Trans. 742, 745 (1975)).  The "cause" refers to "the main ground or origin of the action."  Id.; see also Worldwide Food Distributors, Inc. v. Alberic Colón Bermúdez, 133 D.P.R. 827, 33 P.R. Offic. Trans. ___, slip op. at 7 (1993) ("'the cause is equivalent to a ground or reason for asking'") (citation omitted).

Preclusive effect is given only to judgments that are "final and unappealable." Boateng, 210 F.3d at 63.

We conclude that the prerequisites for application of res judicata are met here. Unquestionably, the underlying issue – the legitimacy of PRIC's refusal to grant appellant an endorsement for a tax exemption – is identical, matching both "thing" (the endorsement) and "cause" (the validity of its denial). The commonwealth circuit court decision on which we rely became final when the Puerto Rico Supreme Court denied certiorari in March 1999.[1] The parties, in pertinent respects, are the same.[2]

---

[1] Shortly before he filed this federal action, appellant filed a second commonwealth lawsuit against PRIC raising claims stemming from the denial of the tax exemption. The Puerto Rico Court of First Instance dismissed that complaint with prejudice, and his petition for review remains pending in the Puerto Rico Supreme Court. It is appellant's earlier commonwealth action, however, that provides the basis for our res judicata holding. It appears that appellant also filed a separate commonwealth action against the Municipal Revenue Collection Center (CRIM), another defendant in this case, and that the CRIM action remains pending as well.

[2] We note that the original commonwealth action involved only appellant and PRIC. Although the federal lawsuit named additional plaintiffs and defendants, the district court supportably determined that most of the new parties (appellant's business entities, individual PRIC officials and PRIC's insurer) held the same interests as the original parties, so res judicata applies as well to the claims against them. See Perez-Guzman v. Gracia, 346 F.3d 229, 233-38 (1st Cir. 2003); Paniagua v. Corporacion de Fomento Recreativo, 986 F. Supp. 694, 697 (D.P.R. 1997) (citing Acevedo Santiago v. Western Digital Caribe, Inc., 140 D.P.R. 452, 40 P.R. Off. Trans. ____ (1996)).
The one possible exception is CRIM (along with several CRIM employees), but the claims against CRIM were properly dismissed for other reasons. Appellant acknowledges that the Butler Act, 48 U.S.C. § 872, prohibits a federal court from barring CRIM's collection of the disputed taxes on his project. He makes an

-4-

Appellant nonetheless maintains that the commonwealth judgment may not be given res judicata effect because it was infected by fraud, and the presence of fraud triggers an exception to the doctrine of res judicata.  See, e.g., Medina v. Chase Manhattan Bank, N.A., 737 F.2d 140, 144 (1st Cir. 1984).[3]  Moreover, he contends that the new allegations of fraud that underlie his RICO and civil rights claims distinguish this case from the earlier litigation and could not have been raised earlier – making res judicata by definition inapplicable.

As best we can tell, the centerpiece of appellant's fraud claim is the draft of a letter, dated July 7, 1997, prepared by architect Jorge Ortiz Colón for signature by PRIC's director at the time, Dr. Luis E. Díaz Hernández.  It is undisputed that the

---

additional due process claim, undeveloped in his brief, based on the revocation of a fifteen-year tax exemption apparently granted to the property before he owned it.  We decline to delve below the murky surface of this allegation, but note that the challenged reassessment occurred no later than 1998; any resulting constitutional claim would have been subject to a one-year statute of limitations.  See Ruiz-Sulsona v. Univ. of Puerto Rico, 334 F.3d 157, 159 (1st Cir. 2003).  His assertion that he did not discover the reassessment until 2001 is belied by his statement that he learned of the alleged retroactive debt in 1998 when he went to the Puerto Rico Tourism Company to apply for an extension of the tax exemption.  See, e.g., Reply to Order to Show Cause and Motion for Reconsideration; Affirmation in Support to Supplemental Opposition to Motion to Dismiss.

[3] At oral argument, appellant's counsel made passing reference as well to the public policy exception to res judicata, see Medina, 737 F.2d at 144.  The point was not developed, however, and in these circumstances, we fail to see how it would provide an independent basis for avoiding the doctrine.

letter, communicating denial of the Institute's endorsement of a tax exemption, was never sent, and that appellant was actually notified of the denial in September 1997 by another PRIC official.[4] It is also undisputed that Díaz Hernández had no contemporaneous knowledge of the draft letter. Appellant claims, however, that the letter was relied upon in a report written by PRIC architect Mildred González Valentín and that González Valentín testified at the PRIC administrative hearing that she had a signed copy of the letter. Appellant suggests that use of the letter, without its purported author's knowledge, was fraudulent and that the letter tilted the proceedings against him.

We are unable to discern the fraud in these allegations. There is nothing in the record to indicate that anyone deliberately misrepresented the draft letter as the actual decision of Díaz Hernández. Although it is alleged that González Valentín relied on the letter in her report (which apparently is not part of the record on appeal), this assertion is of limited significance for two reasons. First, the letter simply summarizes the results of PRIC's internal evaluation of the exemption request, matters that were directly considered at the administrative hearing and by the court on review. Nothing in the record indicates that the result at either stage was affected by the "opinion" on those matters of

---

[4] The record indicates the notification letter was sent by Héctor F. Santiago Cazull, then Assistant Director of the Institute's Patrimony Conservation area.

Díaz Hernández – who was no longer PRIC's director at the time the endorsement was denied. Second, the record indicates that González Valentín concluded in her report that, despite the problems she identified through an examination of the building and relevant documents, a five-year tax exemption would be appropriate if the construction blueprints for the project had previously received official approval, which would indicate compliance with PRIC's requirements for preserving the building's historical value. In other words, despite the presence of the draft letter in her report, González Valentín recommended an exemption if PRIC's evaluation showed that the project met historical standards.

Thus, rather than reflecting fraud because it included the draft letter, the architect's report suggests that the exemption was denied because the project did not fulfill the specified requirements – which was the conclusion reached in both the administrative and judicial proceedings.[5] We thus find no basis for assigning the letter any significance in PRIC's decision to deny endorsement, and certainly no indication that it was fraudulently used to induce an unjustified result.

---

[5] Although appellant asserts that González Valentín testified that she had a signed copy of the Díaz Hernández letter, there is some ambiguity in the record about the certainty of that statement. The lack of clarity is of no consequence, however, because the record contains no other evidence that any copy of the letter, which unquestionably was a draft, was signed. The only reasonable inference to be drawn, therefore, is that González Valentín's testimony, if accurately described, reflected an error on her part and is not evidence of fraud.

In support of his claims, appellant submitted sworn statements from Díaz Hernández, the PRIC director who was the nominal author of the July 7 letter, and three others. Although several of the statements make conclusory reference to fraudulent activity, including forged documents, fraudulent documents and "other improprieties," the only specific assertions of wrongdoing appear to refer to the Ortiz Colón draft letter or the González Valentín report, which, as we have discussed, cannot support a fraud claim. As the following descriptions reveal, the offered sworn statements fail to assist appellant in meeting his obligation under Fed. R. Civ. P. 9(b) to allege his claim of fraud "with particularity." See United States v. Karvelas, 360 F.3d 220, 226 (1st Cir. 2004) ("Rule 9(b) requires that a plaintiff's averments of fraud specify the time, place, and content of the alleged false or fraudulent representations.").

In his statement, Díaz Hernández, who left his position before the endorsement was denied, confirms that he did not write the July 7 letter, criticizes its inclusion in the architect's report and refers to "apparent inconsistencies effectuated by officials at the Culture Institute." He states that he would have granted a ten-year tax exemption because the project had complied with all of PRIC's requirements, but his general declaration of compliance contradicts the agency's and court's formal findings that the requirements were not fulfilled. None of his assertions casts

doubt on the integrity of the review process conducted by the Puerto Rico circuit court or provides a basis for devaluing the finality of its judgment.

Each of the other three affiants, all of whom worked for PRIC, also offered only conclusory assertions of wrongdoing. Luis A. Ruiz Quirindongo, an advisor to another PRIC director, Dr. José Ramón de la Torre Martínez, stated that the file on appellant's project showed that "documents had been concealed, and that possible crimes committed therein, which induced errors within the examiner's official report, as well as the courts and officials of the Culture Institute." Ruiz stated that documentation was forged, but did not specify the documents. He further stated that PRIC's auditor concluded that there had been "an agreement . . . to commit and to cover up crimes" related to appellant's project. Such a bald claim of fraud, left unsubstantiated with any particular misconduct, is insufficient to satisfy Rule 9(b) or to justify re-opening the administrative process.

The remaining two affidavits were similarly lacking in particularity. De la Torre, who had left his position at PRIC by the time of his statement, reported that he "became aware of certain questionable details executed during the process of denial of [appellant's] tax exemption application." He asserted that architect Ortiz Colón "apparently induced the Institute and the Courts to err, by creating the false impression" that Ortiz Colón's

written endorsement was for a limited portion of the project, the tunnel protection plan. The Puerto Rico court, however, directly reviewed the file materials and concluded otherwise.[6]

The final affidavit was from Edgar Correa Salgado, PRIC's Press and Communication Director under de la Torre. Correa refers to "the existence of certain fraudulent documents prepared by Architect Jorge Ortíz Colón" and his – Correa's – recommendation that an internal investigation be conducted into appellant's allegations of improprieties in the endorsement process. Again, there is no identification of particular "fraudulent documents," other than, apparently, the draft letter. According to Correa, when he confronted de la Torre with information regarding "other improprieties and internal security problems" affecting PRIC, de la Torre informed him that he was proceeding with his immediate resignation and "that he would not carry out any action in relation to [appellant's] case."

None of these statements contain factual allegations adequate to undergird appellant's conclusory fraud claim. Even with respect to the July 7 draft letter and the González Valentín report, the statements aver no fraudulent link to the administrative and

_____

[6] The court's opinion stated that "it is clearly evident from the file – in particular from the documentary evidence provided by the petitioner himself – that said endorsement was given for the blueprints that submitted 'the corrective[] measures taken in order to separate (sic) the affected parts of the tunnel', . . . and that the same did not amount to or constitute an endorsement for the project to be carried out in the building."

judicial evaluation process.  If such generalities were enough to justify renewed inquiry into PRIC's denial of the endorsement, the finality of judgments would be seriously compromised.  Lacking a viable fraud claim, appellant may not escape the preclusive effects of the prior proceedings.  Moreover, his inability to adequately allege fraud defeats any RICO claim, which depends upon a showing of at least two predicate acts of "racketeering activity," conduct that in this case was alleged to be mail and wire fraud.  See North Bridge Assocs., Inc. v. Boldt, 274 F.3d 38, 42 (1st Cir. 2001).  Finally, to the extent appellant asserts a section 1983 claim based on conduct unrelated to the revocation of the tax exemption, see note 2 supra, it is insufficiently elaborated in his brief to permit meaningful review and is therefore waived.  We thus affirm the district court's judgment of dismissal.[7]

Affirmed.

---

[7] We have considered appellant's challenges to CRIM's submission of exhibits without translations and to the court's allowance of extra filings by defendants, but find no error warranting reversal of the district court's judgment.